Roger WEHMAN et ux., Appellants,

v.

Joe KUNSHIK et ux., Appellees.

No. 13720.

Court of Civil Appeals of Texas.

San Antonio.

March 8, 1961.

Rehearing Denied April 5, 1961.

Keys, Russell, Keys & Watson, M. W. Meredith, Jr., Corpus Christi, H. H. Schuenemann, Kenedy, for appellants.

Scarborough & Roberts, Kenedy, for appellees.

POPE, Justice.

This is an intersection collision case. Mrs. Jeanette Wehman and husband sued Mrs. Mary Kunshik and husband. The Kunshiks cross-acted and the trial court granted judgment in their favor for $9,335.30, based upon a jury verdict. Appellants contend (1) that the finding that Mrs. Wehman was driving west and crossing a north-south thoroughfare is contrary to the great weight of the evidence, and also that the finding has no support in the evidence; (2) that there is no evidence in support of a finding of $500 for Mrs. Kunshik's future medical and hospital expenses; (3) that certain medical testimony about Mrs. Kunshik's future damages from a neck injury was speculative, and (4) that an admonitory charge that jurors should not speculate about attorney's fees inferentially permitted them to consider such matters as insurance and court costs about which there was no specific instruction. We reverse and remand the case because the jury's finding about the movement of Mrs. Wehman's car was the basis of issues which fixed fault upon her, and that finding is against the great weight of the evidence.

Mrs. Wehman and Mrs. Kunshik collided in the northwest quadrant of the intersection between Bond and Mayfield Streets in Karnes City. Bond Street runs north and south, and Mayfield intersects that street at right angles. Bond Street had the right of way because there was a yield-right-of-way sign located at the northeast corner as one entered Bond.

Mrs. Wehman was driving a 1956 Pontiac, at 25 or 30 miles an hour, and Mrs. Kunshik was driving a 1946 Chevrolet about 15 or 20 miles an hour. The unusual dispute in this case is that each driver claims that she was driving on Bond, and each claims that it was the other who disregarded the warning sign and entered Bond Street from the east. The jury found that Mrs. Wehman was the one who approached from the east and failed to yield the right of way to Mrs. Kunshik. Each driver produced an eyewitness. Mrs. Wehman was accompanied by her fifteen-year-old maid, who supported Mrs. Wehman's testimony that she was traveling south on Bond and Mrs. Kunshik was traveling west on Mayfield. Mrs. Kunshik, supported by a sixteen-year-old witness who saw the accident, testified that she was moving north on Bond when Mrs. Wehman was traveling west on Mayfield.

In our opinion, looking at all of the evidence and particularly the physical evidence created by the accident, the finding is against the great weight of the evidence. The city marshal arrived at the scene before the parties were taken to the hospital. Mrs. Kunshik was unconscious and Mrs. Wehman was in shock and semiconscious. The marshal, called as a witness by Mrs. Kunshik, made a drawing, and at the trial described what he saw. Six clear pictures of the cars, the streets, and the markings on the streets, were made before the cars were moved. These physical and pictorial facts are not disputed. An expert, called by Mrs. Wehman, interpreted the physical facts as reported by the marshal and the pictures.

The Wehman car did not move from east to west on Mayfield, because it left clear rubber marks which are traceable and which place that vehicle on Bond Street moving south prior to the time it reached the intersection. The marshal's drawing showed the movements and positions of the cars. The pictures, independent of the marshal's drawing, show the same facts. The Wehman vehicle, after the accident,

came to a stop in the southwest quadrant headed west. It was on the south half of Mayfield. The left rear tire left a solid skid mark which went to and terminated at the point where that tire rested on the pavement. There is no question about the identification. The clear rubber marks for each of the front wheels were also easily identified. If one would push the Wehman car backwards from its resting place, along the lines marked by each of its tires, that car would be moved backwards toward the north until the whole car would be on Bond Street north of the intersection, headed in a southerly direction. We must rub out and disregard those rubber marks if we approve the finding that the Wehman car approached the intersection from the east instead of the north.

The necessary direction of the forces which pushed the two vehicles to their ultimate resting places is additional proof that the Wehman car moved from the north. The point of impact, located with respect to the street, was definitely established. It was in the northwest quadrant of the intersection. It was identified by a nine-inch cut in the concrete and the conjunction of the skid and rubber marks of the two vehicles which veered away from the point of juncture to the points where each vehicle came to rest. The angle of impact between the two vehicles was easily fixed by examination of the pictures and the tracing of the indentations made by the opposite car. The bends on the Kunshik Chevrolet show that the Wehman Pontiac made a direct hit with its left front bumper against the Kunshik Chevrolet's right front fender, just behind the right front wheel. The two cars then had a secondary contact. After the first contact, they pivoted and struck again with the left rear door of the Wehman Pontiac hitting the right rear fender of the Kunshik Chevrolet. Under any theory, the Wehman Pontiac was to the right of the Kunshik Chevrolet, and they first hit at or about at right angles. They both came to rest in the southwest quadrant, not the

northwest quadrant of the intersection. The Kunshik Chevrolet had its front wheels over the curb at the southwest corner headed southwest. The Wehman Pontiac came to a stop in the southwest quadrant, south of the center line of Mayfield, headed due west. Without force from the north, both vehicles could not have been pushed toward the south. However, with force from the north, it becomes apparent that the impact between the vehicles at right angles in the northwest quadrant, forced the Kunshik vehicle counter-clockwise and the Wehman Pontiac clockwise, so that they pivoted and hit a second time. This is consistent with the skid and rubber marks which can be traced to each wheel of each car and which extend toward the southwest from the point of impact with respect to the location on the street. A striking force from the north is the only explanation for the forced position of the cars after the collision. This explanation is consistent with all the physical facts about skid and rubber marks, the point of impact of the vehicles, the point of impact on the street, the pivot of each car for a second impact, and the speed of the vehicles.

We are not unmindful that two witnesses testified that Mrs. Wehman approached from the east instead of the north. Mrs. Kunshik, however, was rendered unconscious for an extended period. The other witness was a sixteen-year-old high-school student who was in the street one-half block to the west. She had been taking grass burrs from her socks and testified that when she stood up she saw the accident, that the Wehman car was driving west after it failed to heed the yield sign. This is direct evidence, but is understandable in view of the fact that the Wehman car actually was headed west immediately after the impact. She testified that she focused her attention primarily upon the Kunshik car. We conclude that the great weight of the evidence shows that the Wehman car was on Bond Street moving from north to south, and that the finding to the contrary and the other

findings conditioned and based upon that finding can not stand. For this reason the case is remanded.

■ There was no evidence in the record of Mrs. Kunshik's future medical and hospital bills, but because that issue was separately submitted, the judgment which included $500 for that item could be reformed. Since the case is remanded, the point becomes immaterial. We overrule the Wehmans' third contention that the court erroneously admitted speculative medical testimony about future damages. Dr. Munslow, a competent neurosurgeon, explained that Mrs. Kunshik suffered a fracture of the odontoid process. He explained that the skull is held in place by a tooth-like bone which sticks up from a cervical vertebra. This enables the skull to rock back and forth and to turn from one side to the other. The spinal cord inside the vertebrae is also protected by the process. He stated that Mrs. Kunshik's neck had not healed and was not healing. This fact presents an ever-present danger that the bone may move across and guillotine the spinal column resulting in instant death. Prior to the injury, Mrs. Kunshik, then aged sixty-one, was very active. She and her husband operated a farm. She fed the chickens and cattle and drove a tractor. Since the accident, she is inactive and can not make sudden movements nor even turn her head as a normal person. She is unable to lift or carry water and feed. She can do nothing which might jar her neck. The testimony by Dr. Munslow that she may suffer a dislocation, was not a statement of future injuries but was a description of her present dangerous unimproving condition. Everything she does, whether in the house or on the farm, is with this danger hanging over her. Because of this the farm and household activities have been greatly curtailed. The evidence was proper as a description of her unhealed odontoid process which lessened and will lessen her capacity to perform the services about which the court charged.

The final point, that the charge about attorney's fees inferentially approved discussion of other matters not in evidence, is overruled. The court also instructed the jury not to obtain, receive, discuss, nor consider any evidence not introduced and admitted on the trial. The court instructed them further not to become a witness and not to relate personal experiences and knowledge. In view of the instructions given, we hardly see how the jury could infer the contrary.

The judgment is reversed and the cause remanded.